2 Wh 395
e 23 SC 41

[PHILADELPHIA, APRIL 3d, 1837.]

## DEICHMAN'S APPEAL.

The 21st section of the act of 24th February, 1834, which takes away the preference given by the act of 1794, to judgments, in the order of paying the debts of decedents, is not unconstitutional in its application to judgments, which were obtained between the dates of the two acts.

THIS was an appeal from a decree of the Orphans' Court of Lehigh County, in the matter of the distribution of a balance remaining in the hands of the administrator of the estate of Daniel Kramer, deceased.

The material facts which were agreed upon in the court below, are as follows:

On the 1st of December, 1831, Daniel Kramer executed a bond to Sarah Deichman, in the penal sum of $2000, with condition for the payment of $1000, on the 1st of December, 1832, together with interest at the rate of 5 per cent. per annum. Judgment was confessed upon the bond to December Term, 1831.

On the 1st of March, 1835, Daniel Kramer died intestate. His administrators settled the accounts on the 1st of August, 1836, by which there appeared to be a balance in their hands of $1242, which was insufficient for the payment of the debts. The account was referred to auditors, who made a report, distributing the assets according to the order prescribed by the act of the 24th of February, 1834, and allowing the judgment of Deichman only a *pro rata* share.

Exceptions were filed to this report, which after argument were overruled; and on the 2d of February, 1837, the Orphans' Court confirmed the report, and ordered distribution accordingly.

From this decree John Deichman appealed, and the following reason was filed:

"Because the Orphans' Court erred in not decreeing payment of the said judgment in preference to debts of a lower order, agreeably to the 14th section of the act of the 19th of April, 1794."

Mr. *Porter*, for the appellant, argued, that the act of 1834, was not intended to take from judgments then existing, the preference given by the act of 1794; and that if such were the intention of the legislature, the clause was unconstitutional and void. He cited upon this point *D'Wolf* v. *Johnson*. (10 *Wheat*, 367.) *Golden* v.

*Prince,* (3 *Wash. C. C. R.* 318.)    *Farmers and Mechanics Bank* v. *Smith,* (6 *Wheat.* 134.)    *Sturges* v. *Crowninshield,* (4 *Wheat,* 122.) *M‘Millan* v. *M‘Neill,* (4 *Wheat.* 209.)

Mr. *Gibbon* for the appellee, was stopped.

The opinion of the Court was delivered by

Sergeant J.—The constitution of the United States, art. 1, sec. 10, declares, that no state shall pass any law impairing the obligation of contracts. The constitution of Pennsylvania, art. ix, sec. 17, prohibits the passage of any law impairing contracts. The latter instrument differs somewhat from the former in its phraseology, and was subsequently framed, but perhaps there is no difference between them in the substance of these provisions. A contract may be considered as impaired, when its obligation is impaired, for the obligation or means of enforcing the performance, constitutes a part of the contract itself. ·

These clauses have occasioned much subtlety of disquisition, and diversity of opinion. Analogy to decided points will prove a safer guide than entering into the wide field of elementary principles, to which the subject has a tendency to lead.

In *Ogden* v. *Sanders,* (12 *Wheat.* 213,) it was finally held by the Supreme Court of the United States, that a state might, in the absence of a United States bankrupt law, pass a law discharging a person from debts to be subsequently contracted. As to antecedent contracts, it could only modify the existing remedy; but as to future contracts, it might control the remedy in every respect, and even take it away altogether.

By the act of 24th February, 1834, the legislature of Pennsylvania drew a distinction in the distribution of the assets of persons dying insolvent,. between persons whose *deaths* occurred before the act commenced its operation, and those who should die afterwards. The former were left to the provisions of the act of 1794. For the latter a new mode of distribution was substituted, more equal in its nature, and giving no priority to judgment creditors over specialty and simple contract creditors. It is contended by ·the appellant, that the latter provision is unconstitutional, so far as concerns him, because, although the debtor died after the law went into operation, yet the appellant was a judgment creditor before its passage, and his claim would be diminished under the new law. It would seem, however, that it is the debtor's decease which ascertains the right of the creditor to a dividend of the assets, and that the contract is governed by that point of time, and not by the time of contracting the debt. The provision is a future one, operating prospectively, and not affecting an antecedent right. The rule of distribution is the remedy furnished by the law, on the occurrence of uncertain and subsequent events, namely the death of the party without payment,

(Deichman's Appeal.)

and the incapacity of his estate to discharge his debts. In such case the law steps in to provide a rule, founded either on principles of equity or public policy, which the legislature both of the province and state, have been in the habit of changing from time to time, according to the change of circumstances. Latterly, many of the distinctions founded on the forms of contracting debts, such as the employment of seals, or securing them by matter of record, have been thought not justly to entitle a party to a preference over a simple contract debt; and an approach has been made to equality as the highest equity. What code of laws is applicable to the debtor's estate, has always been considered as ascertained by his death; that determines his domicil. Till then he may change his residence, and introduce a new code without any regard to the time of contracting the debts. Besides, it is right and convenient that the rule for settling decedent's estates, should be certain and uniform; but if the existence of a single judgment during the lifetime of the debtor would be sufficient to coerce the application of a former code, notwithstanding he might die many years afterwards, the rule would be uncertain, depending on the will of the debtor and one creditor, although all the other debts were subsequent. There might be two different rules of distribution, applicable to cases essentially the same. The only event that can be considered as vesting any specific right or interest in the creditor, is the debtor's death. His insolvency is then ascertained; the consequences of the contract are consummated; the proportion has become a fixed and determined interest, and cannot be divested. Before that time it is but a future and contingent right. In the case of *Commonwealth* v. *Lewis*, (6 *Binn.* 266,) C. J. TILGHMAN states the difference between the two cases. " A general creditor has no right to any particular part of the estate of his debtor. If he wants to be secure, he should obtain a conveyance, or some kind of lien. A law which should deprive him of the benefit of a conveyance, or lien by *ex post facto* operations, would be most unjust; but a man who trusts to the general credit of his debtor, has no right to complain, if, in case of deficiency of assets, he loses his debt in consequence of a law intended to operate for the public benefit." In the present case, the assets are personal: the appellant's judgment was no lien upon them at the passage of the law, or when it commenced its operation.

We are therefore of opinion, that the distinction made by the legislature was not an infringement of the constitutional provisions referred to.

Decree affirmed.