AINSLIE, receiver, &c. *vs.* RADCLIFF, administrator, &c. and others.

Where the decedent died insolvent and intestate, leaving several outstanding and unsatisfied judgments against him, two of which were docketed more than ten years previous to his death and the others within that period; *Held*, that the owners of the judgments were to be paid out of the personal assets of the intestate, in the hands of his administrator, according to the priorities in the times of docketing their respective judgments; without regard to the fact of some of the judgments having been docketed more and some less than ten years.

By the common law one judgment against the decedent had no preference over another judgment, in payment out of his personal estate, provided both were docketed at the time of his death. And his personal representative had the right to retain for a junior judgment due to himself, or to give a preference to one judgment creditor over another, without regard to any priority in point of time of the docketing of their several judgments; unless some proceedings had taken place, subsequent to the death of the decedent, by which one judgment creditor had obtained a preference over others of the same class.

The usual direction., contained in decrees for the distribution of the personal estate of a deceased debtor among his creditors, to pay the debts in a due course of admininistration and without preference, is not a direction to disregard legal priorities; but it is a direction to pay those debts which are entitled to be first paid, according to their legal priorities, but rateably and without preference as to debts of the same class, where no legal priority exists.

1839.

Ainslie
v.
Radcliff.

By the provisions of the revised statutes, judgments docketed, and decrees enrolled, are entitled to preference in payment, out of the personal estate of the deceased debtor, according to the priority in point of time of docketing the judgment, or of enrolling the decree; and without reference to any supposed lien of the judgment or decree upon the real estate of the decedent. And a judgment which had been docketed, or a decree which had been enrolled, more than ten years before the death of the decedent, is therefor entitled to be paid out of his personal estate, in preference to a junior judgment or decree which had been obtained within the ten years.

March 19.    THIS was an appeal from a decision of the surrogate of the city and county of New-York, settling the priorities, as between different judgment creditors of the decedent, to payment out of the personal estate. G. T. Mumford, the decedent, died in April, 1831, insolvent and intestate, leaving several judgments outstanding against him, two of which were docketed more than ten years previous to his death. Some of the claims in favor of the estate having been subsequently recovered under the French and Neapolitan treaties, his personal representative was cited to account before the surrogate. And a question there arose between the different judgment creditors as to the priorities to which they were entitled in the payment of their debts; the assets in the hands of the administrator being insufficient to pay all. The creditors whose judgments were recovered within ten years, claimed that the priority referred to in the article of the revised statutes, relative to the duties of executors and administrators in the payment of debts and legacies, referred to the priority of the judgment or decree as a lien upon real estate; and that they were therefore entitled to a preference in payment over the creditors whose judgments were of more than ten years standing. The surrogate, however, decided that the judgments were to be paid according to the priorities in the times of docketing the same, whether the judgment had been docketed more or less than ten years. From this decision R. Ainslie, who represented the plaintiffs in one of the junior judgments, appealed to the chancellor.

*W. C. Noyes,* for the appellants. The decree of the surrogate, giving a preference to the several judgments against Gurdon S. Mumford, the intestate, in the order of time of

docketing, without regard to their legal lien, is erroneous and should be reversed. The statute in regard to the distribution of the estates of deceased persons prefers judgments docketed and decrees enrolled in the order of their lien upon lands. (2 *R. S.* 87, § 27, 28. *Revis. Notes, pt.* 2, *ch.* 6, *p.* 49.) It is to be presumed that no innovation upon the common law rules of distribution was intended, unless it plainly appears. (2 *Inst.* 301. *Dwar. on St.* 694, 695.) Other statutes in *pari materia* are to be taken with this as if they constituted one system and the whole is to receive a harmonious construction. (*Dwar.* 699.) The words used in the statute have no necessary relation to time ; on the contrary, they rather mean legal priority, as defined by law. By the common law there was no precedence of time in judgments against the testator ; the executor paid which he pleased first. Judgments against the executor were paid in the order of recovery ; and in chancery judgments against the testator, according to their precedence at law. (*Jac. Law Dic. Priority. Id. Executor,* 6. *Toll. Law of Ex.* 264, 268. *Hickey* v. *Hayter, Adm'x,* 6 *T. R.* 384. 4 *John. Ch. Rep.* 619.) The legislature intended simply to put judgments against the testator on an equal footing in respect to the real and personal estate. The course of legislation shows this very clearly, especially by contrasting the section as repealed with the one adopted. (2 *R. S.* 360, § 12. *Id.* 359, § 4. 1 *R. L. of* 1813, *p.* 501, § 3. 6 *T. R.* 384. 2 *R. S.* 181, § 94, 95, 96, 97.) The rule contended for on the other side, and sustained by the surrogate, is uncertain and contradictory ; for if time alone is referred to, as to a decree, which shall be selected, there being three distinct periods, 1. Time of entering ; 2. Enrolment, which cannot be short of thirty days from making it, (*R. S.* 181, § 97 ;) 3. Time of docketing it in the supreme court. Other statutes in *pari materia*, conclusively show a different rule of construction. The law in regard to a redemption by one judgment creditor from another. (*Laws of* 1820, *p.* 167, § 3.) It was settled by the supreme court that the words " prior judgment" meant priority of lien. (7 *Cowen,* 540.) As to judgments for taxes paid by one co-tenant, they " have priority" over

other judgments as to the lands assessed. (1 *R. S.* 410, §
75.) By the statute regulating proceedings against next
of kin, legatees, heirs and devisees, (2 *R. S.* 454, § 48,)
judgments have a preference over debts of the next of kin,
heir, &c. (2 *Paige*, 592.) By the same law, as to a second
redemption under the revised statutes, where the word
" prior" is used in the same sense as in the laws of 1820, p.
167. (2 *R. S.* 372, § 55, (2).) In the law regulating the or-
der of payment by heirs, devisees, next of kin and legatees,
the same terms are used. (2 *R. S.* 453, § 32. *Revisers'
Rep. pt.* 3, *ch.* 8, *p.* 13.)

*A. H. Dana*, for the respondents, William Radcliff, ad-
ministrator, and L. Mumford and others, heirs of G. S.
Mumford, deceased. Lands of a deceased person are sub-
ject to payment of debts in the same order that the personal
estate is in respect to the priority of the judgments. The
decease of the debtor makes no difference in the lien. The
statute is unconditional that the judgment shall bind and be
a charge upon lands for ten years, and after ten years it
shall cease to bind, &c. as respects purchasers and subse-
quent incumbrances. It still, however, remains a lien, but
the subsequent incumbrances become prior in lien. (*Ex
parte* v. *The Peru Iron Company*, 7 *Cowen*, 540.) The re-
vival of the judgment by scire facias, against the executor
or administrator, or heir, does not change the order of lien.
The judgment still takes effect from the date that it was ori-
ginally docketed. (*Per Savage, Ch. J. in Peru Iron Com-
pany*, 7 *Cowen*, 553, 559.) The scire facias is not an origin-
al proceeding, but a continuation of the original action, the
same as scire facias to revive after a year, where no execu-
tion has been issued ; and the statute in respect to heirs and
devisees does not allow any preference by reason of pro-
ceedings against the heir or devisee. (*Wright* v. *Nutt*, 1
*T. R.* 388.) He is bound by the priority of the judgments
against the deceased and that only ; and this corresponds
with the provision of the statute in respect to executors, that
no preference shall be given to a judgment recovered against
such executor or administrator. (2 *R. S.* 87, § 28.) Judg-

ments over ten years rank with respect to each other as they originally did. Such is the construction given by the court in the case of the Peru Iron Company. A rule was made under a judgment more than ten years old; held, that another judgment of still older date was not junior to the one on which the rule was made, and it was not necessary to redeem. (7 *Cowen*, 559.) The lien not being affected by the death of the debtor, the priority of judgments will not be affected thereby, but will be charged by lapse of time the same as if the debtor had lived. There the order of priority of judgments against the estates of deceased persons is, 1. Judgments docketed within 10 years, according to their dates; 2. Judgments docketed more than 10 years since, according to their dates.

*Geo. Wilson*, for the respondent Harris Wilson. The statute prefers judgments docketed and decrees enrolled according to the order of time in which they are respectively docketed or enrolled. The word "priority" is used in reference to order of time. There is no reason to infer that any construction is to be given to the statute, from the rules by which statutes are to be interpreted, other than the ordinary meaning of the word points out. It is evident that the statute changes the common law rule of distribution to jugdment creditors of a deceased person, and instead thereof appoints a certain order in which executors and administrators are to pay judgments docketed against the deceased. The reasons for limiting the lien of judgments upon real estate to ten years, do not apply to the order of distribution amongst judgment creditors, by executors and administrators. The statute making judgments liens upon lands in the order in which they are docketed, for a period of ten years, clearly shows that precedence in time is considered as entitling to precedence of payment. (*Ex parte The Peru Iron Co.*, 7 *Cowen*, 540.) And the supreme court have decided, that "Where several judgments are of more than ten years standing, they rank in relation to one another according to their actual priority of date the same as if the act, (1 *R. L.* 50, § 1,) had never been passed." (*Ibid.*) There is no reason to infer that any technical legal sense has been confer-

red upon the word "priority" from its use in the statutes or from any discordant or conflicting operation of the statutes. The word "priority," when defined as a legal term, signifies "an antiquity of tenure in comparison with another less ancient," (*Jac. Law Dic., Priority ;*) the very spirit of the meaning here contended for. In all the cases cited the term is used in no other sense than that which its ordinary signification warrants.

THE CHANCELLOR. The only question which arises on this appeal is as to the meaning of the word *priority* as used in the third subdivision of the twenty-seventh section of the article of the revised statutes relative to the duties of executors, &c., in the payment of debts and legacies, (2 *R. S.* 87.) That section directs the payment of debts in classes ; and the next section provides that no preference shall be given to one debt over any other debt of the same class, except as to the debts specified in the third class. This third class of debts, as to which a preference is allowed to one debt over another debt of the same class, embraces all judgments *docketed* and decrees *enrolled,* against the deceased ; which are to be paid *according to the priority thereof* respectively. The most natural reading of this clause of preference certainly is that which has been given to it by the surrogate ; that is to refer the term priority to the time when the judgment was docketed, or the decree was enrolled.

I agree with the counsel for the appellant that, according to the settled law in England, as it existed there at the time of our declaration of independence, one judgment against the decedent had no preference over another judgment in payment out of his personal estate ; provided both were docketed at the time of his death. And that the personal representative had the right to retain for a junior judgment due to himself, or to give a preference to one judgment creditor over another, without regard to any priority in point of time of the docketing of their several judgments ; unless some proceedings had taken place, subsequent to the death of the decedent, by which one judgment creditor had ob-

táined a preference over others of the same class. As early as the 12th of James 1st, it was held by Sir Augustine Nicholles that if A. recovers a judgment against B. and afterwards C. recovers against him, and B. then dies, his executor may pay which of the judgments he pleases ; the latter judgment if he will, for they are all one as to him. (1 *Rolle's Abr.* 926, *Executors R. Judgments in vie testator,* 3.) So it is said by Wentworth, that between one judgment and another, had against the testator, precedency or priority in point of time is not material, but he who first sueth execution must be preferred ; and before any execution sued it is at the election of the executor to pay whom he will first— Yea, if each bring a scire facias upon his judgment the executor may yet confess the action of which he will first, notwithstanding the scire facias was brought by the one before the other. (*Went. Off. of Ex'r, Am. ed. of* 1832, *p.* 269. See also *Com. Dig. Administration, C.* 2.) And absolute decrees in chancery against the decedent, for the payment of money, stood upon the same footing as judgment docketed ; and were, therefor, protected in this court, although the payment of a decree in preference to a judgment could not be pleaded at law as a defence to his personal representatives. (2 *Will. Law of Executors,* 660.) But where the debts were of an equal grade—as if there were several judgments or decrees against the testator or intestate, one of the creditors might get a preference over another by bringing a suit, or scire facias, against the personal representative and obtaining the first judgment or decree against the estate in his hands. And then, upon a suit in this court for the administration of the assets, the creditor who had thus obtained a preference, by judgment or decree against the personal representative, was entitled to retain that preference as against other creditors of the same class. (*Joseph* v. *Mott, Prec. in Chan.* 79.) And this is the preference referred to by Sir Joseph Jekyl and Lord Talbot, in the case of *Morrice* v. *The Bank of England,* (*Ca. Temp. Talbot,* 218.)

Whether the late Chancellor Kent overlooked this distinction, between judgments against the decedent and judg-

ments against the personal representatives, in the case of *Thompson* v. *Brown*, (4 *John. Ch. Rep.* 619,) or whether he meant to confine the rule of preference, as laid down by him in that case, to judgments and decrees obtained against the personal representative, it is difficult to determine from the report ; as it does not appear from the report of that case that any judgments or decrees had been obtained either against the decedent or against his personal representatives. It is evident, however, that my learned predecessor misapprehended the effect of the decision in the case of *Morrice* v. *The Bank of England,* if he supposed that the direction in the decree, to pay the creditors, who had not obtained judgments or decrees against the executrix, *in the due course of administration,* was a direction to pay them without reference to the legal priority which a specialty debt had over a debt by simple contract in the administration of legal assets. A direction to pay debts in a *due course* of administration, is by the very force of the terms used a direction to give a preference, so far as respects the legal assets, to one class of creditors over another, where the law itself has given such a preference. It is therefore a direction to pay docketed judgments and final decrees against the decedent, in preference to specialty debts ; and to pay the latter class of debts in preference to those by simple contract only. The decision of Sir John Leach in *Nunn* v. *Barlow,* (1 *Sim. & Stu. Rep.* 598,) was explicit, that the usual decree in a suit for the administration of the assets of the deceased debtor did not affect the legal priorities of his creditors. He therefore allowed the personal representative to retain assets, which came to his hands subsequent to the decree, in satisfaction of his own debt ; although the effect of such retainer was to give such representative a preference over other creditors of the same class. (*See also Ram on Assets,* 317 ; 2 *Will. Law of Ex.* 682.)

But it is evident from the note of the revisers that they considered the case of *Thompson* v. *Brown* as settling the law differently from what I have supposed it to have previously been, on both of these questions. They understood the decision in that case to be that judgments and decrees,

obtained against the deceased debtor, were entitled to pre-ference in payment, out of the personal estate of the dece-dent, according to the priority in point of time of recovering the judgment or obtaining the decree; and that in the ad-ministration of legal as well as of equitable assets, in this court, specialty creditors were deprived of their common law right of preference over simple contract creditors, as well as being placed upon terms of perfect equality as between all the creditors of the same class. The section of the revised statutes in relation to the order to be observed, in the pay-ment of the debts of the decedent, by his personal represen-tatives, was therefore framed accordingly. And the legis-lature added the word *docketed*, after the word judgments, in conformity with the previous statute on that subject. The word *enrolled* was also added, after decree, for the purpose, I presume, of excluding decrees which were not final and perfected at the death of the decedent. That this priority was not intended to have any reference to the sup-posed lien of the judgment or decree, upon the real estate of the debtor is evident from the fact that a prior decree, if enrolled, although it is not docketed so as to make it a lien upon real estate, is to be paid in preference to a younger judgment which is docketed, and which may therefore be a lien on the decedent's real estate, if he had any, within the jurisdiction of the court. The preference which the com-mon law gave to judgment debts over debts by specialty, or debts by simple contract, was not founded upon any sup-posed lien of the judgment upon the real estate of the dece-dent. For the preference extended to the judgments of all the inferior courts of record in England, and to decrees in chancery, which were not liens upon real estate, (2 *Will. Law of Ex.* 657.) But the rule, as to preferences in pay-ment, was founded upon the common law principle that a specialty debt was a debt of a higher nature than a debt by simple contract, and that a debt of record was of a higher nature than either.

The decision of the surrogate in this case, that, by the provisions of the revised statutes, judgments docketed and decrees enrolled are entitled to preference in payment, out

of the personal estate of the decedent, according to the priority in point of time of docketing the judgment, or of enrolling the decree, without reference to any supposed lien of the judgment or decree upon his real estate, was therefore correct. The sentence and decree appealed from must be affirmed with costs ; and the proceedings must be remitted to the surrogate with directions to proceed and ascertain the amounts due upon the several judgments, or upon such of them as are necessary to exhaust the assets which shall be ascertained to be in the hands of the administrator upon a final accounting by him ; and to ascertain who are the present owners of such judgments, either by assignment or otherwise, to the end that a decree may be made for a final distribution as soon as practicable ; and that so much of the fund, now in the hands of the administrator, as is not necessary to be retained to abide the result of the litigation in reference thereto, may in the meantime be decreed to be paid to the persons entitled to the same, immediately.