EJECTMENT.

## Robinson *vs* Miller.

Case 92.

APPEAL FROM THE MADISON CIRCUIT.

*Devisees. Dower. Tenant for life. Reversion.*

April 25.

JUDGE MARSHALL delivered the Opinion of the Court.

The case stated.

THIS ejectment of Robinson *vs* Miller, was formerly before the Court, and the opinion then rendered, reversing the judgment which the plaintiff had obtained, 1 *B. Monroe,* 88, is referred to as containing a general statement of the case as it then appeared on the record. Upon the return of the cause to the Circuit Court, the declaration was amended by striking out the demises from Whitlow and wife and James Maxwell, leaving only the demise from Robinson, to whom James Maxwell had, in 1832, conveyed his interest in the 200 acres which had descended to him from his father, Basil Maxwell; but James Maxwell having, by deed made in

1820, conveyed to T. C. Page, under whom the defendant claims, his interest in so much of the 200 acres as lay outside of the dower tract allotted to his mother, the deed to Robinson passed only his interest of one third in the dower tract of 58½ acres; and it was for the recovery of this interest alone that the action was prosecuted after the amendment of the declaration.  Upon the last trial as on the first, the principal question on which the plaintiff's right of recovery depended, was whether the dower right of B. Maxwell's widow, acquiesced in and recognized as it had been, presented a valid obstacle to the right of entry of the heirs of her husband or their alienee.  It was decided in the former opinion that although Basil Maxwell, who died in possession of the land, may not have had the legal title but only a perfect equity to the land, still by our laws his widow was entitled to her dower therein, and was moreover, as against the heirs, entitled to remain in the mansion house and retain possession of the home farm until dower should be assigned to her, and that this right was not affected by the conveyance of the legal title to the heirs, in consideration solely of the equity which had descended to them from their father, and that they did not acquire the right of entry against the widow by reason of such conveyance even if there had been no allotment of her dower.  It was also decided, that although if Bazil Maxwell had only an equitable title, the assignment of dower to his widow, under the authority of the County Court of Madison county, had in itself no validity because the Court had no power to make the assignment in such case, still the subsequent acquiesence of all parties in the assignment actually made, and the recognition of it by the dowress in her deed conveying it to Page, and by the heirs in their deeds (of 1820, 1822, and 1826,) conveying their respective portions of the 200 acres outside of the tract so assigned for dower, made it their act, and as such, valid and binding upon their alienees.  To these opinions we still adhere, and they must certainly be reregarded as governing this case at least, so far as they are applicable to the facts now appearing.

Principles of the former opinion cited and approved.

ROBINSON
*vs*
MILLER.

All the evidence introduced on the first trial was also brought forward on the last, but it was made more clearly to appear, and may now be assumed, that neither Thomas nor Bazil Maxwell had acquired the legal title, but that the land was held by equitable title only until the conveyance was made to the heirs of Basil Maxwell in 1816. It was further proved on the last trial that Thomas Maxwell, who died about the close of the year 1795, left a widow who remained in the mansion house of her husband upon this 200 acres, living with her son Bazil Maxwell, to whom her husband had devised the 200 acres in fee until his death, about the year 1810, and afterwards with his widow until her own death; that in January, 1812, one third of the 200 acres, including the mansion house and the whole of the 58¼ acres, which were afterwards allotted as the dower of B. Maxwell's widow, was assigned her for her dower by Commissioners appointed by the County Court of Madison county, and that she died before the assignment of dower to the widow of Basil Maxwell which was in November, 1813. Upon these new facts it is contended that Basil Maxwell's widow had no right to be endowed of any part of the land which had been assigned to the widow of Thomas Maxwell for her dower, but had only a right of dower in the remaining two thirds, and that the assignment of said land to the widow of B. Maxwell having been made during the infancy of his heirs, and by their guardian, who was interested in the dower, their acquiescence and recognition of it, if made in ignorance of her having no right to be endowed of that land, was not binding upon them and was no bar to this suit, unless such acquiescence and recognition had continued more than twenty years, and instructions to this effect, moved for by the plaintiff having been refused by the Circuit Court, the propriety of this refusal presents the chief question for our consideration.

In coming to the decision of this question it is necessary to determine, first, the extent of the interest which B. Maxwell took under his father's will, in one clause of which the testator says: "*I leave* to my loved wife *her* "*thirds* of this place I now live on her lifetime, likewise

*The facts appearing in this case on the last trial.*

*Instructions of the Court to the jury in the last trial.*

*The devise in the will of Thomas Maxwell to B. Maxwell.*

"the household furniture and all my personal estate, &c. "to dispose of it to the children as they grow up to the "age the law requires, as she may think proper, with the "advice of the executors," &c. &c.; and in the next clause he says, "I give to my oldest son, Bazil Maxwell, "two hundred acres of land that I now live on," &c. &c.; "my son Bazil is hereby required and obligated to take "the care and oversight of the family, and in particular "for the support of his mother, and in conjunction with "her, to see how the children are disposed of." In all the devises to his other children, he uses the words "I give," &c.

The devise to the son, B. Maxwell, clearly imports that he was to have the immediate fee in the whole tract. Shall it be restricted by the preceding clause? This should not be done if any reasonable operation can·be given to the first clause, consistently with its language, and not violating any obvious intention of the testator. May not the first clause then be properly understood, not as *giving* to the wife any interest or right in the land which she would not otherwise have had, but as merely refer-ring to and recognizing the right of dower, which the law would give her, and leaving her to claim her thirds? If the first *clause* had been, "I leave to my wife her dower or her right of dower in the land I live on," and the next clause, "I give to my son, B. M., two hundred acres of land that I now live on," there could scarcely have been a doubt that it was intended to give the immediate fee in the whole land to his son, subject to the claim of dower, just as it would have been if it had descended instead of being devised to the son; and such, we are strongly inclined to think, is the true constructive effect of the will as actually written. He does not give his wife any portion of the land, but leaves to her *her thirds* for life. He gives to his son the whole 200 acres.

If such be the true construction of the will, B. Max-well being devisee of the immediate inheritance in the entire tract and being in possession, was undoubtedly seized or possessed to the whole extent, although the tes-tator's widow, having a right of dower, was also on the land and living with him. For the mere right of dower

*Margin notes:*

The construction of the devise of Bazil Maxwell.

Land of which the testator was in possession, he devised to his wife her thirds and to his son the whole tract, both residing on the land in the same family, the

ROBINSON
vs
MILLER.

son is possessed
of the whole
tract, subject to
the dower inter-
est.when assert-
ed.

In such case the
wife of the son
is dowable of one
third of the en-
tire tract.

being no actual present estate, and giving no right of entry or possession, would not at all interfere with the extent of his possession or seizin; and if the right of the widow to remain in the mansion house and plantation of her deceased husband until dower is assigned, would restrict the possession of the heir or devisee, who is in possession with her, which we do not admit, the statute of 1796, giving such right in this state, had not passed at the death of T. Maxwell, nor until a year afterwards.

B. Maxwell then being lawfully possessed or seized, during the coverture, of the whole 200 acres, his wife was entitled, as against his heirs, to be endowed of one third of the entire tract. Whether if the seizin which descended to them from their father, and of which she claimed to be endowed, was to any extent lawfully defeated before the assignment of dower to her, this would have been so far a sufficient answer to her claim of dower, on the ground that the seizin of which she claimed having been so far defeated and divested, was as if it never had been, need not be decided; because, in this case, there was no act done which was of a nature to defeat or divest the seizin of B. Maxwell to any extent. For though it be admitted that the right of dower of T. Maxwell's widow would be paramount to that of B. Maxwell's widow, and that the effect either of a recovery of her dower or of a proper assignment of it, would be to divest the seizin of her son to the extent of the dower so recovered or assigned, according to the case stated in *Coke on Littleton*, 31 *a.* 1 *Thomas' Coke on Littleton*, 574, it must be understood that the endowment which would have this effect, must either be by lawful recovery or by assignment of the heir or of some one authorized to assign; and it cannot be admitted that the assignment made by the County Court, which had no authority to make it in such a case, could have the effect, unless concurred in by the heirs or their guardian, of which there is not the slightest evidence.

Upon this construction of the will, therefore, we are of opinion that the survivorship of the widow of Thomas Maxwell, and the assignment of dower to her, made after the death of Bazil Maxwell, had no effect upon the ex-

tent of his seisin, or on the right of his widow to be endowed of one third of the whole tract; and therefore, did not change the law of the case, as to the effect of the assignment made to her (after the death of T. Maxwell's widow,) and concurred in by the heirs. And it is to be observed, that the construction which has been put on the will, is strengthened by the fact, that the second clause obviously lays a burthen on the demise to Bazil Maxwell in regard to the support of his mother—that she lived with him for fifteen years without claiming her thirds, either under the will or as dower, and that after his death and at the expiration of sixteen years from the death of her husband, she had the third part of the land assigned to her by metes and bounds, not as her portion under the will, but as dower. Whence it may be inferred that it was understood, that the testator intended to provide for her by the bequest of the personal estate, and by the obligation imposed on B. Maxwell, of taking care of her support, with the expectation, doubtless, that she was to live with him upon the land, but leaving her to claim her thirds in it or not, as she might choose.

If, however, this should not be the true construction of the will, but it should be understood as devising to the testator's widow one third of the land for life, and if the devise of the whole to B. Maxwell must, consequently, be restricted so as to give him a present interest in two thirds only, with the remainder in the other third, after his mother's death, and if his seisin during his mother's life, must consequently be restricted to two-thirds of the tract, and by reason of his dying first, was never extended to the remaining third, so that his widow was entitled to be endowed only in two-thirds of the tract, still, as Bazil Maxwell and his mother were jointly possessed during his life, without any partition, her interest and possession did not exclude his possession and seisin from one part rather than another, and as his widow and infant heirs still remained jointly in possession with his mother, and as the subsequent attempt to assign dower to the latter, which was wholly inoperative as an assignment of dower, was certainly not such a partition as could have the effect of a legal severance of the possession and in-

terest, and did not, in fact, divest the possession which the widow and heirs of B. Maxwell held, on which, until lawful partition, they had a right to hold in common with the widow of T. Maxwell, it seems to us that the possession and seisin of B. Maxwell continued in his widow and heirs, just as it had been in himself, unaffected either by the mere survivorship of his mother, or by the ineffectual attempt to assign a seperate portion of the land as her dower; and that, upon the death of his mother, nothing having occurred to exclude his possession and seisin from that part of the land which had been attempted to be assigned to her, that part was rightfully subject to the dower of his widow.

We have already decided that, although the assignment of dower to B. Maxwell's widow was invalid as the act of the County Court, it was by recognition of the heirs, in their several deeds, conveying the adjoining lands, and made after they came of age, adopted as their act. And if it be conceded that the assignment of dower, by the heir in a tract which was not subject to dower, but in satisfaction of a rightful claim of dower in another tract, would not, of itself, make the widow technically tenant in dower of the land so assigned, and bar the right of entry of the heir—and that a recognition by the heir of such an assignment made by another, would be equally ineffectual, unless the assignment was made or adopted by the heir as an exchange, in which case he would have no right to enter upon the land thus assigned, while he kept that which had been retained in lieu of it; yet as the land assigned for dower in this case was legally subject to it, the simple assignment of it by the heir, or his recognition of an assignment made by another, whereby he adopts it and makes it his own, is all that is necessary to confer upon the widow the technical character of tenant in dower, implying and including the right of holding the land free from the entry of the heir.

Assignment foi
dower, though
informally made
yet acquiesced
in for twenty
years and recog-
nized by the heir,
No conveyance from the heir to the dowress being necessary, but his mere assignment of her dower and delivery of possession, or his recognition and adoption of such assignment and of her right of possession being sufficient to complete her title as to him, it follows that the

ROBINSON
*vs*
MILLER.
_____
when of full age,
will be upheld.

recognition, as established in this case, was sufficient without any aid from lapse of time, to give it strength. The assignment of dower thus recognized, was by operation of law, as effectual against the heirs as their actual conveyance would have been. And although it may be, that more in value or extent was assigned than the dowress was strictly entitled to, and that this excess may, in the present instance, have been the consequence of the heirs being ignorant that their mother was not entitled to dower in the whole tract, we do not perceive that the fact either of their being an excess, or of its being caused by ignorance, as supposed, could have the effect to invalidate the assignment in a court of law; or to give the heirs a right of entry upon the dower land. If there had been, in this case any evidence authorizing the inference that their recognition of the assignment as previously made, was occasioned by the fraud of the dowress or others identified with her, in misrepresenting or concealing the extent of her right, it might be necessary to decide to what weight these facts would be entitled in this action of ejectment. But there is, in our opinion, no legitimate ground in the evidence for inferring that the widow or her husband, or any others interested with her, knew any thing more, either of the fact or of the law, upon which the extent of the right of dower depended, than the heirs themselves did, when they recognized and adopted the assignment of dower which had been previously made. It may be added that the heirs have never yet, so far as appears, alledged their ignorance of the true extent of their mother's right of dower, nor intimated any dissatisfaction with the assignment as made; and even the deed under which the plaintiff claims the interest of one of them, does not import that it was intended to convey any interest inconsistent with the assignment which had long before been recognized by the grantor. This consideration might not, it is true, prevent the grantor from availing himself of any legal objection affecting the validity of the assignment, but it gives no aid to his attempt to bring into a court of law any merely equitable objection, if any such objection actually exists.

Upon the whole, we are of the opinion that there was no error either in overruling the instructions as asked for on the part of the plaintiff, or in giving that for which the defendant moved, in which the acquiescence and recognition by the heirs of the assignment of dower, as made, was stated to be an effectual defence to the action, without regard to the question of ignorance or fraud, of which last there was no evidence.

Waste by dowress or other tenant for life, is not sufficient to authorize a recovery in ejectment by the reversioner.

With regard to the two remaining points which have been made in the case, it is necessary only to say, 1st, that it never has been held, so far as we know, that proof of waste by a dowress or other tenant for life, is sufficient to authorize a recovery in ejectment by the reversioner, or that the forfeiture of the thing wasted is enforcible by any other remedy than the action of waste; and we are not prepared to establish a precedent to that effect in this case, even if there were no objections to the enforcement of the forfeiture, in favor of the present plaintiffs, and against the present defendant, which would prevail in the action of waste. And, 2d, that although by

Nor has it yet been decided in Ky. that a tenant for life may forfeit his estate by claiming the fee in a court of record or a court of equity, (which was not by the ancient law, a court of record,) and the filing of a bill by the tenant for life against the reversioner, claiming an equity in the fee, growing out of the acts of the reversioner, is not a ground of forfeiture authorizing an entry by the reversioner.

the ancient law, which, however, has not yet been practically applied in this State, a tenant for life might forfeit his estate by claiming the fee in a court of record, we have not seen that such a claim, made in a proceeding in equity, which by the ancient law, was not held to be a court of record, has been deemed to be, of itself, a ground of forfeiture; and we are decidedly of opinion that the filing of a bill by the tenant for life, against the reversioner, in which he claims an equity in the fee, growing out of the alledged acts of the reversioner himself, is not a ground of forfeiting his estate, which would authorize an entry or recovery by the reversioner. The Court, therefore, did not err in excluding the evidence on both of these points.

Wherefore, the judgment is affirmed.

*Turner* for appellant; *Breck* for appellee.