McAdam, Ch. J.
The entire system of legislation upon the subject shows that with °few well defined exceptions the estates of deceased persons are to be administered by the persons upon whom the trust devolves, by and under the direction of the surrogate’s court, without outside interference or control. The statute directs that executors and administrators shall proceed with diligence to pay the debts of the deceased, and it designates the order of. their payment. 3 R S. (6th ed,), 95, § 37. The third subdivision of the section cited, provides for the payment of “judgments docketed, and decrees enrolled, against' the deceased, according to the priority thereof.” Each class designated is entitled to payment in full before any payment can be made upon a debt of a subsequent class. The judgments docketed and decrees enrolled are to be paid without reference to any hen of the judgment or decree upon real estate. Ainsley v. Badliffe, 7 Paige, 439
The lien, if necessary for the collection of the judgment debt, was originally enforced against the heirs or devisees by scire facias, making them parties to the record (1 Paine *136 & Duel’s Pr.; 60 Graham’s Pr., 806), and when this writ-was abolished the remedy was by summons against the heirs or devisees (old Code, 329, afterward § 376), and in 1850 (chap. 295) an auxiliary remedy was furnished by which the lien might be enforced by execution to be issued, after leave obtained on notice to the heirs and other parties to be affected. This act is entitled “An act to provide for the enforcement of judgment hens against the real estate and chattels real of judgment debtors. 1850, chap. 295. These systems have in turn been abohshed, and the remedy is now obtained under section 1380 of the present Code. See preliminary note to Throop’s Code, at chap. 15, art. 3. This section, following the phraseology of the act of 1850 (supra), permits the execution to “be enforced against any property upon which it is a hen,” upon obtaining leave, etc. The term “hen,” although used at times in different senses, involves the notion of a right vested in a creditor to control the enjoyment or forbid the disposition of some property until its owner has discharged the debt. Abbott’s Law Die.
Whether an execution may issue under section 1380 (supra) in a case where there is no hen to be enforced, is a question not now necessary to be decided, although the implication is against the power. When there is no hen which the creditor is required to enforce for the preservation of his legal rights, the judgment against the decedent is regarded simply as a contract debt of record judicially estabhshed, with a preference in the order of payment. If the legal representative fails to pay with diligence, the creditor may, after six months since the granting of letters, arouse him to activity by an appheation to the surrogate, on petition, for an order directing the representative to pay the claim, or its just proportional part (Code, § 2717), and the owner of a judgment, like any other creditor, may take this proceeding for the payment of the judgment debt. Redfield on Surrogates (2d ed.), 564.
The judgment is, prima facie, a vahd outstanding claim against the estate proved by an exemplified copy of the judgment roll. If there are sufficient assets and no good cause exists to the central y, we suppose the appheation is one which ought to be granted as of course. Why the plaintiffs have not made such an appheation to the surrogate’s court we are at a loss to know. If it be because there are not sufficient assets to pay, the answer is that the plaintiffs have not shown any hen on real or even personal property which gives them any equity over other judgment creditors of the decedent. The policy of the law is to have estates administered by the surrogate and not by the sheriff. Executions against the estates of decedents are not to issue ps of course, hence appheation for leave to issue such writs- *137 are necessary that the court, as well as the surrogate, may determine whether a proper case has been made out for granting the relief applied for.
The moving papers, after stating the fact that judgments were recovered and are unpaid, allege as- a reason for the application that Mr. Camp, the temporary administrator, has in his hands assets consisting of personal property (not described, but probably money) “upon which the judgments are a hen.” How these judgments became a hen on assets in the hands of the temporary administrator does not appear, nor can it be readily imagined. It is evidently an imaginary lien, not real, for it is not warranted by any fact presented, nor any law to which our attention has been called.
These assets are practically in custodia legis to be administered as the law directs, free from any interference or control by creditors, except in the manner and to the extent authorized by statute. They are not to be transferred to the sheriff for distribution, but are to be administered according to well, defined rules, under the direction of the surrogate’s court. If there are other judgments, they are entitled to a preference out of the very property which is sought to be levied upon, and if there are no older judgments, then the plaintiffs have priority, and the contemplated execution and levy are useless. The plaintiffs do not appear to require any aid from this court to collect their judgments, which are mere contract debts of record against the decedent, and they can obtain all the relief they need by a more orderly proceeding in the surrogate’s court.
We are aware that the object of the double application to the court and the surrogate is that the court in which the judgment was recovered may adjudge the legal rights of the parties, and the surrogate may pass upon the rights of the creditor in view of the conflicting or equal claims of others upon the estate (49 N. Y., 160; 72 id., 518), and that either application may precede the other (28 Hun, 452; 49 N. Y., 160), and with this object in view, we adjudge, as we lawfully may, that the judgments are valid claims, and that the statute of limitations will not run against them until twenty years after their recovery (Daniel v. Morrison, City Ct. R. Supplt., 49), with such further extensions of time as the statute gives on account of the decedent during the life-time of the judgment.
But we hold that the proofs presented do not warrant the leave to issue execution, either as matter of right or in the exercise of judicial discretion. It follows, therefore, that the orders appealed from must be reversed, with costs, but with leave to renew on presenting facts showing that *138 such leave has become necessary for the protection of the legal rights of the plaintiffs, respecting the enforcement of their judgments.
Hyatt and Ehrlich, JJ., concurred.
Note.—Within what time leave tobe given. «-Leave to issue execution on a judgment against a decedent is not to be granted until three years after the grant of letters testamentary or of administration, (Code, £§ 1380, 1251), and not necessarily then, if the personal estate is sufficient to pay the debts (matter of Bentley, 16 Abb. P., 90, and see also Kerr v. Kreuser, 28 Hun., 452); for if there is sufficient personal estate to pay the debts, the enforcement of a lien against the real property of tne decedent might create useless expense, and inflict injury upon heirs or devisees interested in having such debts discharged from the primary fund—the personal estate to which the creditor should first look for tile payment of his judgment.
Execution issued against defendant who dies after levy and before the return day. —Executions issued against a debtor in his lifetime may be enforced after his death, without leave. Wood v. Moorhouse, 1 Lans., 405; aff’d 45 N. Y., 368; Holman v. Holman, 66 Barb., 215. It was held, in Flanagan v. Tinin, 37 How. Pr., 130; 53 Barb., 580, that when a defendant dies after execution is issued against his property, and within five years after the issuing and return of the execution, that no order of the court is necessary in issuing a new execution. But in the later case of Wallace v. Swinton, 64 N. Y., 188, it was held that an •cxec„.tion against real property, issued after the death of the judgment debtor, is absolute y void as against those having in their hands any portion of the real estate of the deceased alii cted by the judgment, who have not been made parties to proceedings authorized by law to revive the judgment.
Executions on judgment against executors or administrators in their representative rapacity.—Judgments against executors and representatives in their representative capacities are not liens on the property of the decedent, unless made a special lien thereon by the express terms of the judgment. Code, § 1823. See also James v Beesley, 4 Redf., 236 Where the interest of the decedent was “ leasehold,” it rests in the executors or administrators, and a lien may attach thereon, which may be enforced by execution after leave granted. See Despard v. Churchill, 53 N. Y , 199; The People v. McAdam, 84 id., 295; 3 R. S. (6th ed.) § 4; id., 96, §42; id., 125, §§ 19-23; Bigelow v. Finch, 17 Barb., 394; Cook v Kraft, 3 Lans., 512. Tucave to issue execution on a judgment recovered against cxecul ors or administrators in their representative capacity may bo granted by the surrogate without any other application. Code, § 1825. When execution is issued against executors, describing them in their representative capacity., such description alone is sufficient to prevent the sheriif from levying upon their individual property. Olmsted v.Vredenburgh, 10 How P., 215. The personal representatives of a mortgagor may he directed to pay a delicien -y arising from a foreclosure sale. Glacius v. Fogel, 88 N. Y., 434; and see Williams v. Eaton, 3 Redf., 503; compare James v. Beesley, 4 Redf., 236; id., 516; id., 516 n. The form of execution against an executor or administrator is prescribed by the Codo (§ 13711, and the proceedings to he taken on obtaining leave to issue an execution on judgments recovered against executors or administrators in their representative capacity, will be found in Bedfield on Surrogates (2d ed.), 559, et seq.
Disputed claim against estate.—The surrogate has no jurisdiction to determine the validity or amount of a disputed claim against an estate, even upon an accounting. Qlacius v. Fogel, 88 H. Y., 434, and cases cited. A creditor, therefore, if lie seek payment of his claim in case of contest before the surrogate, should show, either that his claim has been assented to by the executor, or duly established against him by a court of competent jurisdiction. Dayton on Surrogates, 489; Tucker v. Tucker, 4 Keyes, 127; Shaul’s estate, 1 Tucker, 332.