Second National Bank v. Blauvelt.

THE SECOND NATIONAL BANK OF NEWARK, NEW JERSEY,
appellants,

*v.*

FANNIE L. BLAUVELT AND THE EXECUTORS OF PATRICK
MATTHEWS, deceased, respondents.

1. A decree in equity is a judgment, and as such stands equal in rank with a judgment at law in the distribution of the assets of an insolvent estate.

2. Under the statute directing that judgments entered of record against a decedent in his lifetime shall have the preference and be first paid, distribution is to be made *pro rata* if there are not assets sufficient to pay all in full.

On appeal from a decree of the orphans court of Essex county.

*Mr. David A. Ryerson,* for appellants.

NOTE.—Decrees in equity against a decedent stand on the same footing as judgments at law in regard to preference in payment out of his assets. *Searle* v. *Hale, 2 Vern. 37, 2 Freem. Ch. 103; Searle* v. *Lane, 2 Vern. 88; Shafto* v. *Powel, 3 Lev. 355 ; Morrice* v. *Bank of England, Cas. t. Talb. 217, 4 Bro. P. C. 287 ; Tucker* v. *Yell, 25 Ark. 420 ; Woddrop* v. *Price, 3 Desaus. 203;* although a few cases hold that this equality is limited to decrees relating to land, and does not apply to those for the payment of money only, *Astley* v. *Powis, 1 Ves. Sr. 496 ; Mildred* v. *Robinson, 19 Ves. 585 ; Lee* v. *Green, 6 De G. M. & G. 155.*

It must be a final decree, *Smith* v. *Stiles, 2 Atk. 385 ; Perry* v. *Phelips, 10 Ves. 34 ; Farrar's Case, 13 S. C. 254;* or judgment, *McIntosh* v. *Wright, Rich. Eq. Cas. 385 ; Thomas* v. *McElwee, 3 Strobh. 131.*

A decree of foreclosure in Ireland does not participate equally in English assets, *Wilson* v. *Dunsany, 18 Beav. 293* [criticised in *Kloebe's Case, L. R. (28 Ch. Div.) 180*] ; or a judgment obtained there, *Harris* v. *Saunders, 4 B. & C. 411;* or in another state, *Gainey* v. *Sexton, 29 Mo. 449 ; Colt's Estate, 4 W. & S. 314; Cameron* v. *Wurtz, 4 McCord 278 ; McElmoyle* v. *Cohen, 13 Pet. 312 ; Brown* v. *Pub. Admr., 2 Bradf. 103;* or a judgment of a justice of the peace, *Clingman* v. *Hopkie, 78 Ill. 152 ; Scott* v. *Ramsay, 1 Binn. 221 ; Patterson's Estate, 1 Ashm. 336 ; State* v. *Johnson, 7 Ired. 231 ; Bettinger* v. *Ridgway, 4 Cranch C. C. 340 ; Stevenson* v. *Weisser, 1 Bradf. 343 ; Sherwood* v. *Johnson, 1 Wend. 443 ;* or one obtained in the United States courts, *Bernes* v. *Weisser, 2 Bradf. 212.*

A judgment is entitled to such priority if obtained before, although not actually entered until after the debtor's death, *Burnet* v. *Holden, 1 Mod. 6 ;* see

*Mr. M. J. De Witt,* for John N. Utter.

*Mr. Oscar Keen,* for Fannie L. Blauvelt.

*Mr. Charles Borcherling* and *Mr. William Silas Whitehead,* for executors of Patrick Matthews, deceased.

THE VICE-ORDINARY.

Two questions of law are raised by the appeal in this case. The facts are few and undisputed. Jeremiah Counsellor died intestate in March, 1887, possessed of a small personal estate, consisting principally of money, which on his death, became due on a policy of insurance on his life. He owned no land. His estate was insolvent, and was so declared. After the payment of the expenses of administration, funeral charges, and the physician's bill during the intestate's last sickness, the surplus remaining in the hands of the administrator, for distribution among

*Patterson's Appeal, 96 Pa. St. 93 ; Clark's Case, 15 Abb. Pr. 227 ;* or if the verdict be entered before, *Colebeck* v. *Peck, 2 Ld. Raym. 1280 ; Dunn's Case, 5 Redf. 27 ; Mills* v. *Jones, 2 Rich. 393 ;* or the judgment be confessed at the term during which the defendant therein dies, *Nichols* v. *Chapman, 9 Wend. 452 ;* or it is signed before although not registered until after such death, *Kemp* v. *Waddingham, L. R. (1 Q. B ) 355 ;* see *Bothomly* v. *Fairfax, 1 P. Wms. 334.*

Judgments of record and decrees are preferred although the representatives have no actual notice thereof, *Littleton* v. *Hibbins, Cro. Eliz. 793 ; Searle* v. *Hale, 2 Vern. 37, 88 ; Fuller* v. *Redman, 26 Beav. 600 ; Nimmo* v. *Commonwealth, 4 Hen. & Munf. 57, 76 ;* see *Herbert's Case, 3 P. Wms. 117; Hickey* v. *Harris, 6 T. R. 384; Hutchcroft* v. *Titford, 5 Dana 353 ; Bassett* v. *Slater, 81 Mo. 75 ;* but not judgments of record in another county, *Commonwealth* v. *Barstow, 2 B. Mon. 290 ; Nimmo* v. *Commonwealth, 4 Hen. & Munf. 57, 66, 79.*

In some states, by statute, such judgments are entitled to priority of payment according to their dates, *Davis* v. *Smith, 5 Ga. 274; King* v. *Morris, 40 Ga. 63 ; Kerr* v. *Wirmer, 40 Mo. 544; Trust* v. *Harned, 4 Bradf 213 ; Galloway* v. *Bradfield, 86 N. C. 163 ; Maumey* v. *Holmes, 87 N. C. 428 ; Girard* v. *McDermott, 5 Serg. & R. 128 ;* see *First Nat. Bank* v. *Gage, 93 Ill. 172 ; Meyers* v. *Meyers, 19 Grant's Ch. 185 ; Black* v. *Barton, 6 S. & M. 239.*

Such statutes are not retroactive, *Woodworth* v. *Paine, Breese 374;* see *Deichman's Appeal, 2 Whart. 395 ; McClure* v. *Melton, 24 S. C. 559.*

Other preferred claims, in the same class, are paid *pro rata* where the assets are inadequate to pay them all in full, *Bennett* v. *Ives, 30 Conn. 329 ; Ritter's Estate, 11 Phila. 12.*—REP.

Second National Bank *v.* Blauvelt.

creditors was less than $3,350. Debts of record, consisting of judgments at law, and decrees in equity, entered against the intestate in his lifetime, exceeding $24,000, were exhibited to the administrator within the time, and in the manner, limited and directed by the order to bar creditors. These debts are held by four different persons. Two of them are judgments at law, amounting together to a little over $2,300, and the other two are decrees in equity, amounting together to $22,000 and upwards. The debt of the appellants consists of a judgment recovered in the Supreme Court of this State, and stands, with respect to the others, first in order of time. The surplus in the hands of the administrator was sufficient to pay this debt in full, and also the one standing next in priority of date. The statute regulating the order in which the debts of a decedent shall be paid, says:

"Judgments entered of record against a decedent in his lifetime, funeral charges and expenses, and the physician's bill during his last sickness, shall have preference, and be first paid out of the personal and real estate of the testator or intestate." *Rev. p. 764 ¿ 58.*

This regulation controls, whether the decedent's estate is solvent or insolvent. If his estate is insolvent, then, by a subsequent section, it is directed, that after the debts above enumerated have been paid, the balance of his estate, real and personal, shall be distributed among his other creditors in proportion to the sums that shall be due to them respectively. *Rev. p. 770 § 81.* The orphans court, in decreeing distribution in this case, directed that the surplus remaining in the hands of the administrator should be distributed among the creditors holding debts of record, ratably; that is to say, in proportion to the sums due to them respectively. Two faults are imputed to this decree. First, that a decree in equity is not a judgment, within the meaning of the statute above quoted; and secondly, that priority in date gives priority in right, and that, where there are several judgments, distribution must, under this statute, be made not *pro rata,* but by preferences, those first in date being entitled to be first paid.

The first ground of appeal is, in my judgment, unsupported by either precedent or reason. A decree in equity, adjudging that

one person shall pay a sum of money to another, is, in its form, substance and effect a judicial sentence, just as much so as the judgment of a common law court. It is a judgment, and has from the earliest times, been regarded as standing in the same rank with a judgment at law, and as possessing equal dignity. A decree in equity is equal to a judgment (*Com. Dig. tit. "Administration," C. 2*), and stands in the same order of payment. *2 Wms. on Exrs. 1005; Grif. Reg. 1281, note.* A money decree of the court of chancery of this state, has, by express statutory provision, the same force, operation and effect as a judgment of the supreme court. *Rev. p. 113 § 56.* But without this statute, I think it is clear, that the respondents would have been entitled to participate in the distribution of the surplus, in this case, as creditors holding judgments for their debts.

Nor do I think the other ground of appeal can be sustained. It stands, it will be observed, on nothing but the mere fact that the appellants obtained the first judgment. They were more diligent than the other creditors, but they gained nothing by their diligence. Their diligence gave them no advantage. It does not appear that an execution was issued on their judgment; they do not claim under a levy; it is certain that they did not, by the simple recovery of their judgment, acquire a lien on the fund now in the hands of the administrator, or a legal right to priority in payment out of it, for the fund did not become a part of the intestate's estate until his death. So it would seem to be entirely clear, that the most that can be said in favor of the distinction or preference they claim is, that their judgment stands first in date of recovery; but, except in this single particular, they stand, both in point of equity and legal right, precisely on the same level with the other judgment creditors. Unless, therefore, mere priority in date of recovery, unsupported by a lien of any kind, is sufficient to give them a legal right to priority in payment, the preference they claim cannot be allowed.

Mere priority in date of recovery gave no right to preference in payment at common law. According to the rule of common law, where two or more judgments had been entered against the same person, at different dates, neither, after the defendant's

death, was entitled to a preference over the others, to be paid out of the defendant's personal estate, unless such preference had been acquired by levy, or some proceeding instituted after the defendant's death. *Ainslie* v. *Radcliff, 7 Paige 439 ; 2 Wms. on Exrs. 1004.* Wentworth, in his treatise on " The Office and Duties of Executors," says : " Now, to see how they ( judgment creditors) stand among themselves, let this be observed, viz. : that between one judgment and another had against the testator, precedency or priority of time is immaterial, but he which sueth execution must be preferred, and before any execution sued, it is at the election of the executor to pay whom he will first." *Wentworth (14th London ed.) 269.* Judgments were, however, by the common law, to be preferred in payment to debts of a less dignified character.  The order of payment prescribed by the common law was, first, funeral charges and the expenses of administration ; second, debts of record ; third, debts by specialty ; and, fourth, simple contract debts. *Haines* v. *Price, Spen. 480 ; Grif. Reg. 1281, note.*

This was the state of the law when the statute under consideration was passed.  The statute is an old one.  It was passed in 1799. *Pat. 435.*  It has undergone some changes in phraseology, but it is unnecessary, for present purposes, to trace them. The direction is, that judgments, entered of record against a decedent, in his lifetime, shall have preference and be first paid. Nothing is said about the order of their payment as among themselves.  They are spoken of as a class—preference is given to them as an aggregation—the language being, that judgments shall have preference and be first paid ; so that the words of direction embrace the last in date just as completely as the first. No hint is given that it was the legislative purpose that a distinction should be made between the first and the last.  None in fact exists.  As between two judgments recovered against the same person, at different dates, under which neither has, as against the other, acquired, by levy or otherwise, a right to be first paid out of the property of the defendant, and a court is called upon to apply, in payment of the judgments, money belonging to the defendant, to which neither judgment creditor

12

has any right, except such as is common to all creditors to have their debtors pay their debts, I think it would be very difficult, if not impossible, to find a reason, founded either in justice or policy, which, if there was not money enough to pay both, would justify the court in giving all to one and nothing to the other. In such case, it would seem to be undeniable that equality would be equity. That, I think, is the rule which the legislature intended to prescribe for cases of this kind. If any other class of debts had been designated, as debts by specialty, or simple contract debts, that would, unquestionably, have been the construction which the statute would have received. As a matter of common fairness, it would seem to be manifest, that the same rule of construction should be adopted in respect to debts of record, in a case where they all stand precisely on the same foundation, and neither has, as against the others, any superior right, except that arising from age, to the fund to be applied in their payment.

*Thompson* v. *Brown, 4 Johns. Ch. 619,* was cited by the counsel of the appellants as an authority in point. As I understand that case, it has no bearing whatever on the question under consideration. A question of priority is there discussed, but only as it relates to the rights of creditors, who, subsequent to the death of their common debtor, have recovered judgments at law and decrees in equity against his legal representative. The question, as to the relative rights of creditors holding debts of record against a decedent, is not touched. The case presented no such question.

The respondents are entitled to a decree of affirmance, with costs.